Next case on this afternoon's docket is the case of People's State of Illinois v. Raymond Bannister. We have Fletcher Carroll for the opponent and Mr. Gomez for the athlete. Good afternoon, your honors. My name is Fletcher Hamill and I represent the defendant, Nopalot Raymond Bannister. Can you please the court? This case, this is the appeal from defense second stage dismissal of his post-provision petition. And when I originally briefed this case in the opening brief, I framed the issue as whether or not defense or post-provision counsel had adequately amended the defense petitions to raise it to make its claims. Now, after the state's brief and a bit of my reply, I think the issue has shifted a bit in this case. Now, since the state does not really contend that defense post-provision counsel actually adequately amended the petition, the issue really is whether or not counsel's failure to amend the petition under rule 651c can be condoned by this court by one of the two excuses that are posited by the state in its brief. So with that in mind, I would briefly summarize the facts of this case. And it's real brief. Really, the relevant facts are pretty simple. There's agreed that the defendant shot both of the Coleman brothers during an altercation between DeAndre Coleman and DeAndre Coleman. Beyond that, you had two stories that were presented to the jury. That is, case witnesses who all testified that the altercation was a fist fight, that neither party was armed, and that the defendant shot the Coleman brothers when DeAndre started to get the better of Wesley Coleman in the fist fight. Obviously, outlining a first-degree murder and an attempt first-degree murder of charge. The defense witnesses all testified that it was not a silver object that all the defense witnesses thought was a gun and struck Wesley Coleman with that gun, or with what they thought was a gun, and then the defendant shot the Coleman brothers at that point out of either self-defense or defense of another. So again, a very different outline. And so what came down to was the credibility held between these witnesses. And there was not a lot of evidence other than the witness's testimony to corroborate either story. But one thing that there was, was this silver crescent wrench that's become kind of the centerpiece of what I think is the main claim on this appeal. And the crescent wrench was identified by one of the defense witnesses as something that could have been a silvery object that was in DeAndre Coleman's hand, but there was a problem. DeAndre Coleman fell where he was shot, the police were on the scene a few minutes later, and the wrench was found or was recovered in a yard, a significance that was a distance away. And the state seized on that to argue, in both closing argument and rebuttal, that this wrench could not possibly have been in DeAndre Coleman's hand because it was so far away. Now fast forward to the defense post-conviction petition. In the post-conviction petition, the defendant alleges that the wrench was actually moved prior to being collected by the police and that nobody, well there's nothing on the record had been said about this before. And he was able to attach to the petition a police report which actually described that the first officer at the scene saw the wrench in the street in the but then the wrench was later recovered in the yard far away by an evidence technician and having been moved there by persons unknown. So it was a seemingly a significant fact. Now the defendant phrased or couched the argument in his petition as a due process crime. My due process rights were violated when this wrench was moved. And he didn't really have much else to say legally on that issue. Now he got counsel in the second state and counsel reframed the issue, but I would contend did a terrible job of it. Counsel called this a chain of custody issue first. In one sentence, this was a chain of custody issue. The wrench being moved at that point has nothing to do with chain of custody. And even if it did, the remedy for chain of custody would be to keep the wrench out of evidence, which is the exact opposite of what the defendant wants at the trial. Then he called it a greedy claim, but it's not a greedy claim because the defense knew about it. It was in the police report that was ostensibly tendered to defense counsel. That's why the defendant had it. And then he calls it a probable cause thing. The police didn't have probable cause to arrest the defendant. I can't even fathom what that has to do with the wrench being moved. And so that's what counsel did. And the petition was dismissed and now we're here and in my opening brief, I identified two claims that could have been raised by counsel. First, he could have argued that the prosecutor committed misconduct when he argued to the jury, knowing that the wrench had originally been seen in the area of the body, that the fact that the wrench was way over in the yard precluded the possibility that the under his arm. And second, I argued that he could have argued that trial counsel is ineffective for failing to jury in evidence that this wrench was there. Now the state, like I said, does not contest that a post-conviction counsel inadequately performed on this petition. It doesn't argue that any claims were adequately made by counsel's amendments. Instead, the state argues, counsel was not obligated to raise the claims that I identified because basically it was one of two excuses. And neither of these excuses apply here. The first excuses the state posits are that counsel was not obligated to raise these claims because the exact claims were not raised in the post-conviction petition, the pro se post-conviction petition that the defendant originally filed. And the problem with this argument is it misapprehends the role of the law. It is true that it is possible, or it is true that defense counsel is not required to scour the record or scour the discovery to find post-conviction claims that were never raised in the original petition. However, that does not apply to whether or not counsel has to reframe claims that were raised with new legal theories. And that's what we're dealing with here. And the perfect illustration of that is the Turner case that I cited in my opening brief, where a defendant raised a claim that could have been raised on direct appeal, didn't raise an issue of ineffective assistance of counsel. Counsel came in, also raised the original claim but not the claim of ineffective assistance of counsel. And our Supreme Court held that counsel did not adequately amend the petition because counsel did not add the claim of ineffective assistance of appellate counsel, which was what is necessary to make the claim in the post-conviction petition. That's what we have here. We have a claim, we have the underlying claim that the defendant made. The wrench was moved. That violated my rights. And we have, and we have, counsel has the duty there to find, you know, to find the appropriate legal theory to put that fact into to make it work, to make it work as a post-conviction claim. That's what, that's what counsel failed to do here. So there were two, you know, there were two options for counsel, really should have raised both, and he raised neither. The second excuse that is offered by the state is that counsel didn't have to make this claim, these claims, because these claims would have been futile. And again, I think there's a, it's a, based on a misapprehension of the law. Again, it is true that when you, when there are no claim, no viable claims available, post-conviction counsel can be found to be, well, it's not inadequate if he fails to raise a viable claim. And, but if you look at carefully at the cases that are cited in the briefs, you'll see that they don't, they wouldn't, they don't apply here. They apply in a very different situation, in both, in Vasquez, a state case that the state relies on, the claim that the defendant wanted his post-conviction counsel to put in the petition was that his confession should have been suppressed under the Vienna Convention. Now, that's not a viable claim. It's not possible to have your confession suppressed under the Vienna Convention, is what the appellate court held. Therefore, there was, as a matter of law, that was not a legally viable claim. And no facts, nothing, nothing counsel could have done could have made that a viable claim. You know, and similarly in Perkins, the case that I discussed in my brief, the petition was late. It was untimely filed. There was no apparent way to make, to make that be excused. There was no argument to be made. Counsel made a poor argument, but that was all he had. And again, as a matter of law, those courts could say with absolute certainty that those, the claims in those cases were not viable. In this case, what the state wants to argue, argues to you is that the claims are not viable because if you look at the evidence and the like that the state wants you to look at it, they will probably lose, eventually. But that's, that's not the standard that Perkins and Vasquez were, were advocating. This, these claims are certainly viable. They certainly could win. The, the, the problems that the state identifies, but we didn't know where the, exactly where the wrench was because the police report doesn't say exactly that it was next to DeAndre's body. Well, that's the kind of thing that counsel was supposed to deal with in the, in the second stage of counsel. The Post-Conviction Hearing Act is entirely a statutory creation. The process is not one that is, that a defendant is constitutionally entitled to. And the duties of counsel are pretty well spelled out by Supreme Court Rule 651C. Under that rule, counsel has to, if it's, if a petition, pro se petition survives summary dismissal and counsel is appointed, counsel is required by that rule to certify that they consulted with the petitioner to ascertain his, his contentions of deporation of constitutional right, that they've and that they've made any amendments to the pro se petition that are necessary for the presentation of the contentions. The Illinois Supreme Court has reiterated several times that it is not the duty of post-conviction counsel to go exploring the whole record and coming up with novel ideas of deporation of constitutional right that are not raised in the petition. What counsel's job is to do, what his obligation is to do, is to present the petitioner's claims in an appropriate legal form. So this court begins its examination with counsel, post-conviction counsel performance, which it only has to be reasonable, with looking at what the defendant raised in his pro se petition. And there are six things. The first is that he was deprived of due process and equal protection by withholding of exculpatory evidence, a wrench. Well, it's clearly refuted by the record because the wrench was like, was admitted into evidence at the defendant's trial. Petition made claim that about the chain of custody, um, which precluded, um, fingerprinting and forensic evaluation made such inadmissible. Well, there was testimony at the defendant's trial that the surface of the crescent wrench was of the sort that could not be fingerprinted. It didn't have a suitable surface to lift and fingerprints from. Uh, defendant's pro se petition also asserted misconduct by the prosecution due to the spoliation of evidence that is not preserving their wrench for forensic testing. Well, that's also, you know, that's a non-issue because it was definitely preserved and it was admitted into evidence at the defendant's trial. Um, the other one was that the indictment was obtained under false pretenses and without probable cause. The fifth one is that appellate counsel was ineffective for not raising, uh, trial counsel's conflict of interest because that had been, uh, trial counsel had been formerly employed by the state's attorney. Uh, the sixth that, uh, appellate counsel was ineffective for failing to raise, uh, issues of ineffective assistance of trial counsel, such as the failure to present mitigating evidence of psychological impairment, uh, failing to request a lesser offense instruction on reckless, reckless contact, uh, failed to, uh, tender a general not guilty form or that counsel failed to seek, uh, dismissal of the indictment. Now, if you look at these things objectively, the issues that, that, that, uh, the defendant is now claiming should have been added are not there, not by fair implication, and post-conviction counsel did not have a duty to amend it to add the, the, uh, issues that, uh, defendant now claims he should have added because he didn't have a duty to go beyond what was shaping the defendant's pro se petition into an appropriate legal form to present his claims. And he doesn't say, he doesn't make any claim that, you know, in any consultation that he may have added this claim, uh, when counsel came to ascertain what his claims of constitutional error were. Um, but the, the matter that really puts the, the creatus on the defendant's argument is this, that the wrench is all involved with an idea of whether the victim, D'Andre Coleman, uh, had a wrench so that it, it could feed into his claim of self-defense, uh, or defense of another, that is, Momen, who D'Andre Coleman, they were having a fight. Now, the, the wrench was admitted into evidence at trial and defense counsel, trial counsel, put on evidence of witnesses who said, well, we saw something shiny in D'Andre Coleman's hand and they showed, uh, Wren, counsel showed Wren the wrench and he said, is that, did it look, and Wren agreed it looked something like that. It was something shiny and silver. The jury has already seen this evidence. The jury has already waited and, and they have rejected it. They believe that the testimony of, of the people's witnesses that said he didn't have, D'Andre Coleman did have nothing in his hand. But even that aside, the real, uh, problem with this argument is that this court has already found that at the time that the defendant shot D'Andre Coleman, he wasn't hitting anybody, not whether the wrench was in the intersection or moved to the grass by the pink house. It doesn't matter. The salient point is this court and the, and the jury below has already found that the defendant was not justified in using deadly force on D'Andre Coleman because he wasn't hitting anyone at the time the defendant shot him. So it doesn't make any difference. I mean, you could have raised this in a post-conviction petition and it wouldn't have made any difference. It's not a viable claim to show any deprivation of constitutional right to effective assistance of trial counsel because where, wherever, whether D'Andre Coleman had that wrench or not at any point is irrelevant because at the time the defendant shot him, he wasn't hitting anybody. He wasn't threatening anybody. He had, his brother Revere had just been shot in the face by the defendant and had stood up and staggered off. And D'Andre Coleman was standing up according to the testimony at trial and he turned around and he was trying to run away. And that's when the defendant shot him. This wrench has nothing to do with any deprivation of the constitutional right to effective assistance of trial counsel. Trial counsel did what she could do. She put that wrench in D'Andre Coleman's hands, not next to his body, because there's no report that says it was next to his body. It said it was found in the intersection. Where it was found after the event is, is not probative of whether there was a valid self-defense or defense of another defense, because wherever, whether he had that, that wrench in his hand at any point in time prior to the shooting, the point, the salient point is he didn't have it in his hand when he was shot and he wasn't hitting anybody and he wasn't threatening anybody. So this, this whole, this whole issue would have had no merit if post-conviction counsel had raised it, but he didn't have a duty because it wasn't there in the post-conviction petition by, even by their implication. Now, as far as, you know, the closing argument, I, counsel didn't get into that and, and I won't either. I think the first part of the case, again, is conflating the idea of, of coming, of post-conviction counsel having to come up with new claims versus post-conviction counsel being required to come up with legitimate legal theories in which to put the claims that the defendant already made. The defendant in this case already made the claim in his post-conviction petition, the wrench was moved and that violated my rights. Now, this is a first stage pro se post-conviction petition. He's only required to plead sufficient facts to state the gist of a constitutional claim. He's not even required to plead any legal theory whatsoever, much less the six that he did plead in the petition. It's not, it's not appropriate to, to limit post-conviction counsel to the legal theories that the defendant came up with on his own as pro se petition. In fact, if, if it's entirely possible for a second stage, so the defendant could say the wrench was moved period. And, and that can lead to the second stage. Now by the state's theory that, that counsel is not required to raise a new legal theory, then you would have counsel be not required to raise any legal theory at all in the second stage. It's not, that's not what the law is. The law is that the defendant needs to come up with, has to come up with the facts and he needs to make the gist of a claim. And counsel's bid is required to come in and is required to mold those claims into new legal theories that fit. And that's what happened here. And that's what didn't happen here and what should have happened here. So, so counsel was under, under an obligation to find the appropriate constitutional claims that were based on, on the fact that the wrench was moved and given the record that these are the two, the ones I identified. Because really the problem here is not that the wrench was moved. The problem is that the jury wasn't told that the wrench was moved. And instead the jury was told that the wrench was found way outside of, of DeAndre's reach and was told by the prosecutor in the trial court, it's impossible for DeAndre Coleman being armed with that wrench because it was found so far away. That's what they were told. And the state says, well the jury obviously accredited our witness's testimony. Yes, because the jury was told that the physical evidence supported their witness's testimony. They weren't told that the physical evidence actually was supportive of the defendant's witness's testimony because the wrench was actually originally seen in the same area as the eye. So, so it is, it's an extremely important piece of evidence. And, and it's not the fact that the wrench of, of the wrench that is important. It's the fact that the wrench was moved. Can I ask you why this wasn't discovered during or was it available? And would the defense just ignored the fact that it was contained in a police report that it had been moved? You see at this point we don't know. We have no idea. And we do know it was in the police report and the defendant had it. So either defense counsel, you know, either defense counsel had it and, and didn't use it for whatever reason, or, or defense counsel didn't have it and maybe there is a reason. But we don't know because post-conviction counsel didn't, didn't do his job and didn't formulate this claim. And so we just don't know. We don't have the record. I also, I have to take issue with the state's reference to this court's previous opinion in this case. And actually a number of, a number of factual assertions by the state toward the end of her argument saying that, that this court found that DeAndre was retreating at the time that he was shot. And, and that's what the evidence showed. You should be careful because this court was, what this court wrote in this rule 23 order was in response to a reasonable doubt argument by the defendant on direct appeal. The standard of review that this court was reviewing the evidence under when it wrote those paragraphs was viewing the light and what, in the light, viewing the evidence, the light most fair was the state. You were, what you were saying in that paragraph is the state's witnesses said that he was retreating. You were not saying the defense witnesses said retreating. If the jury believe the defense witnesses in this case, it's a clear self-defense second, possibly second degree murder case. And, and, and the state also argues that as well, because the state tells you that, that clearly the jury credited our witnesses testimony. But how do we know? Because they're verdict. And if, and how do we know because if the jury had credited the defense witnesses testimony, the verdict would have been self-defense or secondary murder. So, so it's important to remember that, that the evidence in this case was not nearly as supportive of the state's theory as the state would have, would have you believe today. Thank you.